```
1                      UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF NEW YORK
2

3   --------------------------------X
                                    :
4   UNITED STATES OF AMERICA,       :
                                    :  08-CR-415 (FB)
5                                   :
         v.                         :
6                                   :  225 Cadman Plaza East
    RALPH CIOFFI,                   :  Brooklyn, New York
7                                   :
              Defendant.            :  May 8, 2009
8   --------------------------------X

9
         TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
10              BEFORE THE HONORABLE FREDERIC BLOCK
                   UNITED STATES SENIOR JUDGE
11
    APPEARANCES:
12
    For the Government:        UNITED STATES ATTORNEY'S OFFICE
13                             BY:  JAMES G. MCGOVERN, ESQ.
                               EILEEN JACKWELL, ESQ.
14                             PATRICK SINCLAIR, ESQ.
                               Eastern District of New York
15                             271 Cadman Plaza East
                               Brooklyn, New York  11201
16
    For Defendant Ralph        DANE BUTSWINKAS, ESQ.
17    Cioffi:                  Williams & Connolly, LLP
                               725 Twelfth Street NW
18                             Washington, D.C.  20005

19  For Defendant Matthew      SUSAN E. BRUNE, ESQ.
      Tannin:                  NINA M. BEATTIE, ESQ.
20                             Brune & Richard, LLP
                               80 Broad Street
21                             New York, New York  10004

22
    Court Transcriber:         RUTH ANN HAGER
23                             Typewrite Word Processing Service
                               211 N. Milton Road
24                             Saratoga Springs, New York 12866

25


    Proceedings recorded by electronic sound recording, transcript
    produced by transcription service
```

2

1  (Proceedings began at 3:07 p.m.)
2           COURT CLERK:  I'd ask all of the parties if you
3  would state your appearances for the record.
4           MR. MCGOVERN:  James McGovern, Eileen Jackwell
5  [Ph.], and Patrick Sinclair on behalf of the United States.
6  Good afternoon, Your Honor.
7           THE COURT:  Okay.  Mr. McGovern, how are you today?
8           MR. MCGOVERN:  Very well.
9           MR. BUTSWINKAS:  Good afternoon, Your Honor.  Dane
10 Butswinkas on behalf of Mr. Cioffi who is present.
11          MS. BRUNE:  Good afternoon, Your Honor.  Susan Brune
12 and Nina Beattie for Matt Tannin.
13          THE COURT:  Okay.  Mike, let me give you the bulk
14 material.  I've got it co-mingled in the file.
15          COURT CLERK:  Oh.
16          THE COURT:  I just want to make sure I don't do
17 that.  All right.
18          Good to see you all again here.  When we were here
19 last we, I guess, discussed a bunch of things and we agreed
20 upon some sort of a protocol for proceeding and I think we're
21 all familiar with that.  But briefly, just so we have a record
22 that shows some continuity if I have it correctly, I gave the
23 Government until today to decide whether it would rely on any
24 instances of fraud other than those alleged in the indictment
25 and to disclose the identities of the cooperators -- the co-

1 conspirators, I should say, alleged in the indictment.  And I
2 gave the Government until today to submit a tentative witness
3 list and turn over to the associated 3500 materials and I gave
4 the Government until June 1st to submit a tentative exhibit
5 list.  I declined to second-guess the Government about its
6 <u>Brady</u> and <u>Giglio</u> obligations.  We spoke broadly about it.  And
7 I agreed to sign the defendant's third-party subpoenas and
8 make them returnable today.  That's what I have on my hit
9 list, so to speak.
10           I know that there's a question of reciprocal
11 discovery that the Government wants to discuss today, which
12 we'll talk about, and I think that's what I have carried over
13 from last time.  Did I miss anything?
14           MR. MCGOVERN:  That sounds comprehensive, Your
15 Honor.
16           THE COURT:  If there's anything new, we'll talk
17 about it.  Okay?  And you see I'm a fast talker because I was
18 born in Brooklyn in a hurry.  Okay.  But don't confuse that
19 with I don't know what I'm talking about.  That would be a
20 fatal mistake.  All right.  Now, let's go back as far as
21 the -- I know there's a cat-and-mouse facet to all of this
22 stuff.  You you guys are doing great, went into all of this,
23 you know, collectively discharging all collective
24 responsibilities as officers of the Court as well as, you
25 know, very decided with your roles.

4

1            Does the Government have anything to say about
2  whether we relied on the instances of fraud other than those
3  alleged in the papers?
4            MR. MCGOVERN:  Your Honor, what we have prepared
5  today and I'm handing up to the Court we've previously
6  provided to defense counsel on our arrival here is a letter
7  that sets forth that today in compliance with the Court's
8  April 3 order we turned over to the defense a preliminary
9  witness list as the Court instructed us to do the last date we
10 were here.  We've turned over 3500 material for all of the
11 witnesses on that list for whom we have 3500 material and
12 we -- in the course of that, I believe, 20-some-odd page or
13 20-page letter we set forth all of the Government's
14 allegations of lies or affirmative lies and misrepresentations
15 that were committed by the defendants during the course of the
16 frauds alleged in the indictment.
17           THE COURT:  All right.  I'm just, you know, going
18 through this very quickly and obviously I haven't had a chance
19 to study it, but it's certainly a step in the right direction.
20           MR. MCGOVERN:  It's a -- we would submit that it's
21 the result of an immense effort on the part of the Government
22 and that list of affirmative lies and misrepresentation read
23 in tandem with the indictment is intended to put the
24 defendants on sufficient notice of the lies and
25 misrepresentations that the Government will seek to offer as

5

1  affirmative proof of the frauds in the indictment.
2           THE COURT:  All right.  I commend you for the
3  effort.  I mean, of course, defendants may have something to
4  say about all of that but certainly I want you to know that I
5  think you're acting in good faith throughout and very, very
6  helpful in terms of allowing me to hopefully have an orderly
7  trial here and compliment you on that effort.  Should I
8  withdraw that compliment?
9           MR. BUTSWINKAS:  No, Your Honor.  I just wanted to
10 speak to one issue.  We also had just received the materials
11 and haven't had a chance --
12          THE COURT:  Right.
13          MR. BUTSWINKAS:  -- to study them thoroughly but
14 just from looking at them in a cursory fashion I can see that
15 there are a number of statements that aren't spelled out
16 specifically in the indictment that will have an impact on the
17 motions we file.  Our motions are due Monday and I would ask
18 the Court for leave to have a two-week extension on the
19 pretrial motion so we can take these statements into
20 consideration.
21          THE COURT:  Well, you want to have a little
22 additional time to reflect upon.  Do you see any problem
23 giving them that opportunity?
24          MR. MCGOVERN:  Your Honor, we don't see a problem
25 with giving the defense more -- whatever it is, two weeks to

6

1  put together their motions.
2          THE COURT:  Well, you can do that.  I'm going to
3  have you back here in June because, you know, you see how I
4  process matters.  I really believe on doing it on the bench
5  instead of, you know, having to wrestle through lots of papers
6  and lots of written opinions and stuff like that.  I think
7  this is more effective.  So take your two weeks and you'll be
8  prepared when you come back next.
9          Did we schedule another date here in June?  I don't
10 remember.
11         MR. BUTSWINKAS:  You haven't yet, Your Honor.
12         THE COURT:  So we'll do that and it will be
13 sometime, I guess, towards the end of June and at that time we
14 should be able to get all of our ducks lined up so that you're
15 free for the summer months to go to Paris and the Riviera and
16 relax.  That's my facetious comment for the day.
17         MS. BRUNE:  That's where I'll be.  How about June
18 26th?
19         COURT CLERK:  Sounds good to me [ph.].  2:30.
20         THE COURT:  So we've set that next date and I'll
21 give you enough time to go through all this material, but
22 we're making a lot of progress.  And, you know, we all realize
23 that the fair thing to do is give everybody a proper
24 opportunity to prepare and not to be rigidly committed to the
25 technicality, so to speak, for lack of a better word of the

1  rules.  This is the type of case where you have to be, you
2  know, flexible and fair-minded.  All cases are fair-minded,
3  but flexibility here is definitely indicated.  All right.
4  Very good.
5              MR. MCGOVERN:  Your Honor, if I may, with the
6  fairness in mind there was a prearranged schedule for the
7  defenses for their dispositive motion but we just want to make
8  sure that the Court understands that obviously the Government
9  is going to need more time to --
10             THE COURT:  I don't know what dispositive motions
11 we're talking about.  We'll talk about it in a second.  Hold
12 that in abeyance.  Let me go through the rest of this first.
13 Any problems with the subpoenas?  I signed them and made them
14 all returnable today.  I haven't looked at them.  I haven't
15 heard anything from the Government, so I assume everything is
16 according to Hoyle and no problems.
17             MR. MCGOVERN:  Well, Your Honor, these are 17©)
18 subpoenas that are --
19             THE COURT:  Fine.
20             MR. MCGOVERN:  -- that's duly copied us on.  The
21 last time we were there they apparently served a large number
22 of people with subpoenas.
23             THE COURT:  Right.
24             MR. MCGOVERN:  We've certainly heard about the
25 existence of the subpoenas personally or coun -- my co-counsel

8

1 have not reviewed any of the items that we received as a
2 result of the subpoenas.  In other words, it's not really --
3 we don't have any comment on their ability to enter something
4 that's --
5            THE COURT:  To be continued if there's any
6 problem --
7            MR. MCGOVERN:  Right.
8            THE COURT:  -- you know, in due course you'll let me
9 know.  The -- we're going to -- you have that proposed exhibit
10 list here?  No, not yet, right?
11           MR. MCGOVERN:  Well, Your Honor, I'd like to raise
12 an issue with respect to the exhibit list and just like the
13 defense we'd be looking for some court latitude as well.  We
14 did begin the discussion last time about what the Government's
15 ability would be to produce an exhibit list in this case and I
16 think Mr. Butswinkas said that he wanted us to try and stagger
17 it after we started producing it.
18           THE COURT:  Right.
19           MR. MCGOVERN:  And that seems like a reasonable
20 suggestion.  The problem that the Government is having on the
21 internal side is that we're losing our paralegal at the end of
22 next week and this threesome here represents the Government,
23 as far as this case goes unfortunately.  And we don't have --
24 currently we don't have the ability to double our numbers and
25 do things of that sort.  What we'd be asking for is a July

9

1   15th date for our exhibit list as we will now have a new
2   paralegal starting --
3           THE COURT:  It's getting a little bit perilously
4   close, though, to the trial date and I've got to err on the
5   side of caution here so that people are not going to possibly
6   be cut short and I'm really trying my very best, you know, to
7   eliminate the prospect of having some reasonable request for
8   an internment of the trial date because we have a lot at stake
9   here in terms of a schedule to that.  So I'm not going to give
10  you that much time.
11          If you want an extra week or two, you know, I think
12  I could possibly accommodate that, but I'm not going to go
13  beyond that.  The Government will just have to get more
14  resources.
15          MR. MCGOVERN:  Well, Your Honor, I would just point
16  out that the documents we turned over today didn't only
17  identify the statements that were made.
18          THE COURT:  Right.
19          MR. MCGOVERN:  They also gave Bates numbers and
20  correspondence --
21          THE COURT:  You're on your way.  I understand but
22  let's -- I'll extend this from June 1st to June 26th.  Make it
23  coordinate to when we're going to be here today with the
24  understanding that consistent with your manifest show of good
25  faith throughout that you'll try to do this on a rolling basis

```
                                                               10
 1  if you can do that.
 2          MR. MCGOVERN:  And we appreciate the Court's
 3  indulgence.
 4          THE COURT:  All right.  So just, you know, turn it
 5  over as much as you can as soon as you can with the
 6  understanding that we can take a hard look at it on June 26th.
 7          MR. MCGOVERN:  That's fair, Your Honor.
 8          THE COURT:  All right. So we're trying to help
 9  everybody.  Now, let's turn to the reciprocal discovery
10  because I've tossed the rule book out, so to speak, to defense
11  counsel.  You've got to start rolling in some of your
12  discovery as well.  I'm not going to allow you to say, you
13  know, we're going to wait until the bitter end and then turn
14  it over the day before trial so you have a sense of that.  And
15  I'm going to rely upon your good faith also to start that
16  reciprocal discovery process going and it's only the material
17  that you, you know, plan to rely at trial and your case in
18  chief.  And I think you have a pretty good idea what that is
19  by now and I think that you have to start complying.  So let
20  me hear from you as to what you propose in that respect.
21          MS. BRUNE:  Your Honor, there's been a lot of sort
22  of heat on the -- around this topic and I really don't think
23  there's much there.  The Government has produced, as we always
24  say to you, 8.8 million pages of documents.
25          THE COURT:  Right.
```

1         MS. BRUNE:  And I do think it's going to be helpful
2  once we get a chance to digest the --
3         THE COURT:  You've been digesting.  You know --
4         MS. BRUNE:  -- bill of particulars and --
5         THE COURT:  Do you have anything that you're going
6  to rely upon in your case in chief that comes under Rule 16?
7  Yes or no?
8         MS. BRUNE:  I don't know yet, Your Honor, and I'm
9  saying that in all sincerity.  I think that we will know.  We
10 understand Your Honor's desire to conduct an orderly trial and
11 we're going to obviously respect that, but I am serious when I
12 tell you we don't know.  We, just as the prosecutors walked
13 in, learned about their bill of particulars which expands the
14 number of alleged misstatements and in many ways kind of tilts
15 what we think we're looking at.  We really don't know yet.
16        THE COURT:  You're going to know by June 26th.
17        MS. BRUNE:  All right.
18        THE COURT:  And you're going to start turning things
19 over today.
20        MS. BRUNE:  Okay.
21        THE COURT:  Because, I mean, let's be realistic
22 about this.  You have a good idea what you have and, you know,
23 it's a chess game, to some extent, but I'm here to make sure
24 that, you know, it doesn't get out of control and you have
25 to -- also, you can't have it both ways.  You've prevailed

1  upon me and I've accommodated you in terms of putting pressure
2  on the Government to turn over its witness list in a fashion
3  which is well in advance at trial.  The rules don't absolutely
4  require that unless the Judge decides to, you know, assuage
5  the rules.  You know what that's all about and I've done that
6  in fairness to you.  But, you know, what's sauce for the goose
7  is sauce for the gander.  You're going to have to also step up
8  to the plate and show good faith in terms of reciprocal
9  discovery obligations and I expect to see manifestations of it
10 by June 26th.
11          MS. BRUNE:  Very well, Your Honor, although you know
12 that it's not always sauce for the goose and sauce for the
13 gander since the rule doesn't provide it and the Government
14 bears the burden of proof, but we hear you and --
15          THE COURT:  You all know the rule, you know, that
16 talks about, you know, you have to comply once the Government
17 complies and I'm making the Government comply now and, you
18 know, certainly, you know, you have realized that and I think
19 you have to start showing some responsive compliance to be
20 consistent with the spirit of Rule 16.  Okay.  So you get a
21 sense of what I'm thinking about.
22          MS. BRUNE:  Your Honor, on my list of things for the
23 Government to comply with discovery was I think last time you
24 said that you were going to ask the Government's
25 representatives to state in open court that there was no <u>Brady</u>

13

1 or that any Brady that they had had already been turned over.
2 I wondered if we could take care of that today.
3       THE COURT:  I told -- what I said is they have --
4 they know what their obligation is and that they -- you know,
5 I don't think they have to be reminded of it over and over and
6 over again.  And if the Government wants to make any statement
7 on the record that it's equivocal about or concerned about or
8 wants any rulings for the Court or is in doubt about anything
9 I encourage them to come forward so we don't have to deal with
10 speculation post-verdict should there be a verdict against the
11 defendant.  So that's important to monitor that and I don't
12 think the Government needs to be lectured on it more than
13 that.  Do you have anything you wish to say?  Whenever we're
14 here, of course, you can put on the record whatever you think
15 might be appropriate.
16       MR. MCGOVERN:  Well, Your Honor, we say what we say
17 in every case in the Eastern District of New York that we are
18 aware of our Brady obligations.  In fact, we made a Brady
19 disclosure or we gave a letter over to the defense when we saw
20 that something was potentially Brady a couple of weeks ago.
21 And now we've turned over almost -- you know, we turned
22 over the --
23       THE COURT:  Okay.  Give it time.  Really, this is
24 engaging in prophylactic lawyering which is okay but, you
25 know, I don't think we have to go through this more

14

1  extensively than we've already spoken.  Anything else?
2            MS. BRUNE:  I think not --
3            MR. MCGOVERN:  No, it's not -- I now understand
4  that --
5            MS. BRUNE:  -- not for us, Your Honor.
6            MR. MCGOVERN:  -- goose-and-sauce comment.  I never
7  understood it until you just --
8            THE COURT:  I don't know when --
9            MR. MCGOVERN:  -- explained it.
10           THE COURT:  Is that correct or not?  I don't know.
11           MR. MCGOVERN:  Something like that.
12           MS. BRUNE:  I think it depends on the situation.
13           MR. MCGOVERN:  It is something like that.  I'm not
14 sure it works here, but I understand.
15           THE COURT:  I don't even know why I'm saying those
16 silly things.
17           MS. BRUNE:  No.  So we had nothing else on our list
18 of things to accomplish today, Your Honor.
19           THE COURT:  Very good.
20           MR. MCGOVERN:  Your Honor, I might mention one
21 thing.  As the Court may be aware there are other parallel
22 proceedings going on.
23           THE COURT:  Right.
24           MR. MCGOVERN:  There's, in essence, a proceeding
25 that I know Your Honor probably has some motions about in the

15

1  civil context, but there are also arbitration proceedings that
2  are going on in the state of Georgia and elsewhere.  Our
3  understanding -- although we're not closely monitoring this,
4  our understanding is that witnesses have testified at those
5  proceedings and that at least one of the defendants in this
6  case have subpoenaed copies of those transcripts.  We are
7  being copied on those transcripts by counsel for Bear Stearns
8  and we are coming into possession of items such as those
9  transcripts and potentially items of the SEC depositions if
10 that -- if the Court ever permits them to go forward.
11           What we are concerned about is as we are being
12 copied on these items we want everyone's understanding the
13 Government does not -- we don't view ourselves as having a
14 duty to reproduce those transcripts back to the folks who had
15 actually subpoenaed them.  It sounds silly but I just want you
16 to know it's one of those things like, you know, and say, oh,
17 you had, too.  You should have told me about it.
18           THE COURT:  All right.  But, you know --
19           MS. BRUNE:  We can work this out.
20           THE COURT:  It's okay.  Those things are all matters
21 of public record and obviously the defendant has access to
22 them and I don't think we are going to have any problems in
23 that respect.
24           MR. MCGOVERN:  Finally, the 17(c) subpoena
25 information we're receiving a lot of information in that

16

1  regard.  To be a prophylactic lawyer I'd like to make sure
2  that we're not -- the defense isn't looking for us to
3  reproduce what it is they're -- we're trying to get everything
4  out of our office to them.
5             MR. BUTSWINKAS:  Understood.  Your Honor, we'll
6  reach an understanding on these matters.
7             THE COURT:  This is fine.  I think it's important
8  that we check in with each other periodically to get a
9  [unintelligible] with respect to [unintelligible].  Anything
10 else until June 22nd?
11            MR. MCGOVERN:  No, Your Honor.
12            MS. BRUNE:  No, Your Honor.
13            MR. BUTSWINKAS:  Nothing about [unintelligible].
14            MR. WARREN:  Your Honor?
15            THE COURT:  There is something else.
16            MR. WARREN:  Yes.  My name is Jack Warren.  I'm from
17 the SEC.
18            THE COURT:  All right.
19            MR. WARREN:  We filed a motion at Your Honor's
20 direction.  You've said that when the time came to be specific
21 about discovery and --
22            THE COURT:  Okay.  But that's before the Magistrate
23 Judge.
24            MR. WARREN:  Correct, Your Honor.
25            THE COURT:  Right.

17

1      MS. BRUNE:  Not only that, it was for the U.S.
2 Attorney's Office.  It has nothing to do with the SEC.
3      MR. BUTSWINKAS:  I'm not even in that case.
4      THE COURT:  You don't --
5      MS. BRUNE:  The issue is whether or not the U.S.
6 Attorney's office --
7      THE COURT:  Let me take him.  Let me take him.
8      MR. WARREN:  Your Honor, my only --
9      MS. BRUNE:  -- case is --
10      THE COURT:  Is there any reason why you have to
11 speak to me today?
12      MR. WARREN:  Your Honor, you should know that the
13 defense's position in that motion before the magistrate is
14 that Your Honor has already decided that the reciprocal
15 discovery is not necessary with respect to depositions and
16 documents.  I didn't think you did that.
17      THE COURT:  The Magistrate Judge is perfectly
18 capable of sorting all this out with skilled counsel, you
19 know, advising him of everything that's preceded.  He has a
20 copy of my initial decision.  I spoke to him as recently as 20
21 minutes ago.
22      MR. WARREN:  Thank you, Your Honor.
23      THE COURT:  And he's an excellent Magistrate Judge
24 and we'll see what he says.  And if people are not happy with
25 his rulings you always can appeal to me and I think we have in

```
                                                              18
 1  motion a proper process here.  Okay?
 2           MR. WARREN:  Thank you, Your Honor.
 3           MS. BRUNE:  Thank you, Your Honor.
 4  (Proceedings concluded at 3:25 p.m.)
 5                      *  *  *  *  *  *
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                                    19
 1          I certify that the foregoing is a court transcript
 2   from an electronic sound recording of the proceedings in the
 3   above-entitled matter.
 4
 5                              [signature: Ruth Ann Hager]
 6                              _____
 7                                       Ruth Ann Hager
 8   Dated:  May 11, 2009
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```